1

2

3

4

5

6

7

8

9              IN THE UNITED STATES DISTRICT COURT

10                 FOR THE DISTRICT OF OREGON

11  MICHAEL W. TUCKER,           )
                                 )
12                Plaintiff,     )
                                 )      No.  CV-05-930-HU
13       v.                      )
                                 )
14  OREGON AERO, INC., an Oregon )
    corporation, MJD INNOVATIONS,)
15  LLC, MICHAEL R. DENNIS, and  )      OPINION & ORDER
    JUDE DENNIS, individuals,    )
16                               )
                  Defendants.    )
17  ─────────────────────────────)

18

19  Christopher H. Kent
    Leslie S. Johnson
    KENT & JOHNSON, LLP
20  1500 S.W. Taylor Street
    Portland, Oregon 97205
21
         Attorneys for Plaintiff
22
    Christopher James
23  THE JAMES LAW GROUP
    121 S.W. Morrison Street, Suite 900
24  Portland, Oregon 97204

25       Attorneys for Defendants

26  HUBEL, Magistrate Judge:

27       Plaintiff Michael W. Tucker brings this action against

28  defendants Oregon Aero, Inc., MJD Innovations, LLC, Michael Dennis,

1 - OPINION & ORDER

1  and Jude Dennis.  Plaintiff and defendants move for summary
2  judgment.  All parties have also consented to entry of final
3  judgment by a Magistrate Judge in accordance with Federal Rule of
4  Civil Procedure 73 and 28 U.S.C. § 636(c).

5      For the reasons explained below, I deny defendants' motion and
6  I grant in part and deny in part plaintiff's motion.

7                          BACKGROUND

8      Plaintiff is a mechanical engineer with work experience in
9  human factors engineering.  Oregon Aero (OA) is an Oregon
10 corporation which designs and manufactures products for the airline
11 and aviation industries.  MJD Innovations, LLC (MJD), is an Oregon
12 limited liability company organized by Michael and Jude Dennis.
13 The Dennises are husband and wife and are the sole shareholders,
14 officers, and directors of OA, and the sole members of MJD.

15     Plaintiff met the Dennises in the latter half of 1996 and
16 began a working relationship with OA in 1997, initially pursuant to
17 an oral independent contractor agreement.  Plaintiff's first
18 assignment was to work on seat cushion cores.  He later moved into
19 the development of military products and acted as a military
20 liaison.

21     The parties appear to have exchanged drafts of a written
22 independent contractor agreement (ICA) ("written ICA") in 1997 and
23 into 1998.  Multiple drafts were exchanged.  Neither OA nor
24 plaintiff ever signed the written ICA.  Nonetheless, plaintiff
25 continued as an independent contractor for OA for many years.

26     The patents at issue in this case are sold under particular
27 product names. One, a "BLU Kit" is a helmet pad suspension system
28 consisting of several foam pads and supplied for new helmets.

2 - OPINION & ORDER

1    Another, a "BLSS Kit," is a modification to an existing helmet.

2        Plaintiff asserts that he developed, or assisted in the
3    development of, the "BLU Kit" and the "BLSS Kit."  The products
4    were patented, or have patent applications pending.  Plaintiff was
5    listed as a co-owner of the patents.

6        The parties agree that in October 2003, Mike Dennis told
7    plaintiff that MJD needed to own the patents.  Plaintiff asserts he
8    was the prior owner; defendants assert OA was the prior owner.
9    Between  October  2003  and  May  2004,  plaintiff  signed  five
10   assignments transferring rights in the identified patents to MJD.

11       While it is not necessary to recite the details of plaintiff's
12   compensation  throughout  his  relationship  with  OA  here,  it  is
13   relevant to note that plaintiff asserts that Mike Dennis orally
14   represented  that  after  assignment  of  the  patents,  plaintiff's
15   previous percentage of sales payments that he had been receiving,
16   would be replaced by a formal agreement to pay royalties on the
17   sales of the patented products.

18       Plaintiff terminated his consulting relationship with OA in
19   February 2005.  Plaintiff alleges that he received nothing in
20   exchange for the patent assignments and that defendant breached its
21   oral  contract  regarding  plaintiff's  compensation,  beginning  in
22   January 2005.

23                            STANDARDS

24       Summary judgment is appropriate if there is no genuine issue
25   of material fact and the moving party is entitled to judgment as a
26   matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the
27   initial responsibility of informing the court of the basis of its
28   motion, and identifying those portions of "'pleadings, depositions,

3 - OPINION & ORDER

1  answers to interrogatories, and admissions on file, together with
2  the affidavits, if any,' which it believes demonstrate the absence
3  of a genuine issue of material fact."   Celotex Corp. v. Catrett,
4  477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

5      "If the moving party meets its initial burden of showing 'the
6  absence of a material and triable issue of fact,' 'the burden then
7  moves to the opposing party, who must present significant probative
8  evidence tending to support its claim or defense.'"   Intel Corp. v.
9  Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991)
10  (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th
11  Cir. 1987)).   The nonmoving party must go beyond the pleadings and
12  designate facts showing an issue for trial.   Celotex, 477 U.S. at
13  322-23.

14      The substantive law governing a claim determines whether a
15  fact is material.   T.W. Elec. Serv. v. Pacific Elec. Contractors
16  Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).   All reasonable doubts as
17  to the existence of a genuine issue of fact must be resolved
18  against the moving party.   Matsushita Elec. Indus. Co. v. Zenith
19  Radio, 475 U.S. 574, 587 (1986).   The court should view inferences
20  drawn from the facts in the light most favorable to the nonmoving
21  party.   T.W. Elec. Serv., 809 F.2d at 630-31.

22      If the factual context makes the nonmoving party's claim as to
23  the existence of a material issue of fact implausible, that party
24  must come forward with more persuasive evidence to support his
25  claim than would otherwise be necessary.   Id.; In re Agricultural
26  Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990);
27  California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics,
28  Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

4 - OPINION & ORDER

1                          DISCUSSION

2          Plaintiff's claims generally concern plaintiff's assignment of

3    certain patents to defendants.   In his Second Amended Complaint,

4    plaintiff brings claims of breach of contract, misrepresentation,

5    rescission, and conversion.   OA asserts counterclaims of breach of

6    contract, breach of the duty of good faith and fair dealing, breach

7    of fiduciary duty, fraudulent inducement, unjust enrichment, and

8    rescission.   All defendants also bring a declaratory judgment claim

9    regarding the inventor of the patents, and a claim under 35 U.S.C.

10   § 256, also regarding the inventor of the patents.

11         Plaintiff  moves  for  summary  judgment,  or  partial  summary

12   judgment, on the following claims and counterclaims:   plaintiff's

13   claims  for  rescission  and  conversion,  all  of  the  counterclaims

14   seeking removal of plaintiff as an inventor, defendants' 35 U.S.C.

15   § 285 counterclaim, and the counterclaims of breach of fiduciary

16   duty, fraudulent inducement, and unjust enrichment.

17         Defendants  move  for  summary  judgment  on  the  following

18   counterclaims:  declaratory judgment, breach of contract, breach of

19   the duty of good faith and fair dealing, breach of fiduciary duty,

20   and on a statute of frauds affirmative defense.

21   I.   Breach of Contract Counterclaim - Defendants' Motion

22         The breach of contract counterclaim alleges that plaintiff and

23   OA had an agreement, based on the terms of the proposed written

24   ICA, and pursuant to that agreement, plaintiff owed certain express

25   duties to OA, including, but not limited to, the duty to maintain

26   confidentiality of certain information and the duty not to compete.

27   Defts' Ans. at ¶¶ 49, 50.   OA contends that plaintiff has breached

28   the  agreement  in  various  ways,  including  breaching  the

5 - OPINION & ORDER

1  confidentiality and non-compete provisions.  Id. at ¶ 79.

2      As noted above, it is undisputed that plaintiff and OA had an
3  oral independent contractor agreement which preceded their exchange
4  of multiple draft written agreements.  Despite extensive briefing
5  by both parties, the precise terms of the oral agreement, other
6  than the compensation provided under the oral argument, are not
7  clearly established in the summary judgement record.

8      Plaintiff asserts that from the outset, he was paid on an
9  hourly basis for time spent for OA's benefit and was entitled to
10 reimbursement for some expenses.  Ptlf's CSF at ¶ 16.  Plaintiff
11 also  asserts  that  he  was  further  entitled  to  payment  of  a
12 percentage-of-sales or commission for sales of products he helped
13 develop.  Id.  Defendants admit that plaintiff was entitled to a
14 percentage of sales or commission for sales of certain products,
15 but defendants dispute any characterization by plaintiff that such
16 percentage or commission was limited to products plaintiff helped
17 develop.  Defts' Resp. to Pltf's CSF at ¶ 16.

18     In deposition, Mike Dennis explained that plaintiff received
19 a commission on a "group of products available to him to represent
20 as a sales agent."  M. Dennis Depo. at p. 109.  These were products
21 plaintiff had not developed, but were available for him to sell.
22 Id. at p. 110.  Additionally, he received "[t]en percent of the
23 value of a [BLU kit]," "the primary product of development."  Id.
24 at p. 111.  That was later changed to four percent.  Id. at pp.
25 111-12.  The testimony does not indicate when the change from ten
26 percent to four percent occurred.  He also received 2.4 percent of
27 the gross sales of the BLSS kit due to his contribution to the
28 development of the pads included in it.  Id.

6 - OPINION & ORDER

1    Other than this compensation arrangement, however, nothing in
2    the record addresses any other aspect of the oral agreement.

3    At least one draft of the written ICA provides for plaintiff
4    to receive a monthly payment of $1,666.67 for his consulting
5    services, and an additional commission for sales of certain
6    products described in Appendices A and B to the draft written ICA.
7    Exh. B to May 1, 2006 Affid. of Philip Griffin (Depo. Exh. 40);
8    Exh. B to May 12, 2006 Affid. of Philip Griffin (Depo. Exh. 40).
9    The Appendices are referred as the "Products Under Contract" and
10   "Product Commission Rate Schedule."[1]

11   Exhibit 40 recites that OA desires to retain plaintiff's
12   services and plaintiff desires to provide specialized consulting
13   services to OA in the areas of product design and development and
14   sales and marketing of new and existing products of OA.  Exh. B to
15   May 1, 2006 Griffin Affid. at p. 1.  The draft ICA further recites

16

17        [1] Defendants submitted the exhibit both in support of their
18   motion for summary judgment and in response to plaintiff's motion
     but neither exhibit contains the referenced appendices.  Exhibit
19   1 to the May 26, 2006 Affidavit of Robert Castro contains a
     couple of different pages entitled "Appendix A" and "Appendix B"
20   which appear to be the pages referred to in Deposition Exhibit
     40.  Exh. 1 to May 26, 2006 Castro Affid. at pp. OA 02176, OA
21   02177.  Appendix A lists various products under contract.  Id. at
22   p. OA 02176.  Appendix B lists the commission schedule and
     provides that (1) sales of existing products not listed in
23   Appendix A in which plaintiff is responsible for the sale and
     submits a written sales order, earn a four percent commission;
24   (2) sales of products listed in Appendix A earn a four-percent
     commission unless plaintiff is responsible for the sale and
25   submits a written sales order in which case the commission is six
26   percent; and (3) in the event of externally funded research and
     development, sales and or development of products where plaintiff
27   is partially responsible, plaintiff will be compensated at an
     agreed upon fee, negotiated with OA's officers.  Id. at OA 02177.
28

7 - OPINION & ORDER

1  that the parties were entering

2          this Agreement to set forth the terms and conditions of
3          the Independent Consultant Agreement, to address certain
           matters related to Tucker's contract and contacts with
           Oregon Aero, and to restrict certain activities by Tucker
4          that the parties acknowledge and agree would constitute
           unreasonable and unfair competition and detract from
5          Tucker's loyalty and commitment to Oregon Aero.

6  Id.

7      Exhibit 40 also contains a confidentiality provision and a

8  covenant not to compete.  Id. at pp. 4-5.  A separate provision

9  established that the agreement was to constitute the "entire

10 agreement of the parties concerning its subject matter and

11 supersedes all other oral or written understandings, discussions,

12 and agreements[.]"  Id. at p. 10.  It also provided that it could

13 be modified only in writing signed by both parties.  Id.

14     In deposition, plaintiff admitted that Deposition Exhibit 40

15 incorporated the changes plaintiff had made to Deposition Exhibit

16 41, but he also testified that he could not recall the particular

17 order of the draft agreements and thus, could not recall if there

18 was another after Deposition Exhibit 40.  Pltf's Depo. at pp. 135-

19 36, 138, 140.[2]  Plaintiff testified that by preparing "this

20 document," which presumably refers to Deposition Exhibit 40, both

21

22         [2]  At page 140 of the deposition, plaintiff responds
23 affirmatively to the question of whether "Exhibit 41 contains
   your edits to Exhibit 40?"  Pltf's Depo. at p. 140.  The
24 preceding pages of the deposition make clear, however, that the
   question inverted the deposition exhibit numbers so that the
25 question should have been to ask whether Exhibit 40 contained the
   edits to Exhibit 41.  Thus, it is clear that plaintiff's
26 testimony is that while Exhibit 40 incorporated the handwritten
   edits plaintiff made to Exhibit 41, he nonetheless cannot confirm
27 how many versions of the agreement were exchanged, in what order,
28 or whether Exhibit 40 was the final version.

8 - OPINION & ORDER

1    parties were seeking to confirm "this consulting relationship."

2    Id. at p. 153.  However, plaintiff further stated that the fact he

3    did not sign Exhibit 40 provides a reason to believe that it did

4    not express his agreement with OA at that time in regard to his

5    consulting services.  Id. at p. 140.

6        In the summary judgment motion, OA contends that plaintiff is

7    bound by the non-competition and confidentiality provisions of the

8    written ICA, under any of several different legal theories.  First,

9    OA argues that the written ICA governs the parties' relationship

10   based on a contract formation theory of mutual assent.

11       "Whether a contract existed is a question of law."  Ken Hood

12   Constr. Co. v. Pacific Coast Constr., Inc., 201 Or. App. 568, 577,

13   120 P.3d 6, 11 (2005), modified, 203 Or. App. 768, 126 P.3d 1254,

14   rev. denied, 341 Or. 366, 143 P.3d 239 (2006).  As explained in Ken

15   Hood:

16           Oregon subscribes to the objective theory of
         contracts. . . . . In determining whether a contract
17       exists and what its terms are, we examine the parties'
         objective manifestations of intent, as evidenced by their
18       communications and acts.   . . . . Contract formation
         requires a bargain in which there is a manifestation of
19       mutual assent to the exchange and a consideration. . . .
         The manifestation of mutual assent to an exchange
20       ordinarily takes the form of an offer or proposal by one
         party followed by an acceptance by the other party or
21       parties.

22   Id. at 578, 120 P.3d at 11 (internal quotations and citations

23   omitted).  Additionally, "[a] manifestation of acceptance to the

24   offeror or his agent forms the contract regardless of the intent of

25   the acceptor."  Id. (internal quotation omitted).

26       While the issue of contract formation is a question of law,

27   the more accurate framing of the legal issue is "[w]hether

28   particular historical facts constitute the formation of a

9 - OPINION & ORDER

contract[.]"  Newton/Boldt v. Newton, 192 Or. App. 386, 392, 86
P.3d 49, 52, rev. denied, 337 Or. 84, 93 P.3d 72 (2004), cert.
denied, 543 U.S. 1173 (2005).  Thus, the court must find the
historical facts before resolving the legal issue of whether those
facts constitute the formation of a contract.  See Batzer Constr.,
Inc. v. Boyer, 204 Or. App. 309, 317-18, 129 P.3d 773, 778-79 (in
context of analyzing ambiguous contract term, where parties present
evidence of the circumstances underlying the formation of the
contract as part of the analysis related to ambiguity, "the court
must first find the historical facts before resolving the legal
question whether the term is ambiguous."), rev. denied, 341 Or.
366, 183 P.3d 239 (2006); Wescold, Inc. v. Logan Int'l, Ltd., 120
Or. App. 512, 519-20, 852 P.2d 960, 964-65 (1993) (in context of
analyzing whether the terms of a contract are integrated, court
must first resolve preliminary issues of historical fact, or "what
happened"; then the court determines the legal effects of those
facts).

As echoed in Ken Hood, Restatement (Second) of Contracts § 18
provides that the manifestation of mutual assent to an exchange
requires each party to either make a promise or begin or render a
performance.  Section 19 of the Restatement then addresses conduct
as a manifestation of an assent:

> (1) The manifestation of assent may be made wholly or
> partly by written or spoken words or by other acts or by
> failure to act.
> (2) The conduct of a party is not effective as a
> manifestation of his assent unless he intends to engage
> in the conduct and knows or has reason to know that the
> other party may infer from his conduct that he assents.
> (3) The conduct of a party may manifest assent even
> though he does not in fact assent. In such cases a
> resulting contract may be voidable because of fraud,
> duress, mistake, or other invalidating cause.

10 - OPINION & ORDER

Restatement (Second) of Contracts § 19.

OA relies primarily on Restatement (Second) of Contracts § 20 which addresses the effect of misunderstanding.  It provides:

> (1) There is no manifestation of mutual assent to an exchange if the parties attach materially different meanings to their manifestations and
>> (a) neither party knows or has reason to know the meaning attached by the other; or
>> (b) each party knows or each party has reason to know the meaning attached by the other.
>
> (2) The manifestations of the parties are operative in accordance with the meaning attached to them by one of the parties if
>> (a) that party does not know of any different meaning attached by the other, and the other knows the meaning attached by the first party; or
>> (b) that party has no reason to know of any different meaning attached by the other, and the other has reason to know the meaning attached by the first party.

Restatement (Second) of Contracts § 20.

Comment a explains that subsection (1) of Section 20 "states the implications of the rule of § 19(2) as to meaning of 'manifestation of mutual assent' in cases of mistake in the expression of assent."  Restatement (Second) of Contracts, Section 20, comment a.  The comments further explain that the

> basic principle governing material misunderstanding is stated in Subsection (1):  no contract is formed if neither party is at fault or if both parties are equally at fault.  Subsection (2) deals with cases where both parties are not equally at fault.  If one party knows the other's meaning and manifests assent intending to insist on a different meaning, he may be guilty of misrepresentation.  Whether or not there is such misrepresentation as would give the other party a power of avoidance, there is a contract under Subsection (2)(a), and the mere negligence of the other party is immaterial.

Restatement (Second) of Contracts § 20, comment d.

Relying on Section 20(2), OA contends that the undisputed facts show that the parties intended to be bound by the written

11 - OPINION & ORDER

1  ICA, that plaintiff had a particular meaning of the written ICA,

2  that is, not to be bound by the non-competition and confidentiality

3  provisions, and OA had a different meaning, that is, that plaintiff

4  be bound by those provisions, and because OA did not did not know

5  of plaintiff's meaning, but plaintiff knew of OA's meaning, the

6  contract should be formed according to OA's meaning. Additionally,

7  OA argues, the undisputed facts show that plaintiff has breached

8  these provisions and thus, it is entitled to summary judgment on

9  its breach of contract counterclaim.

10      The summary judgment record before me does not find support

11 defendant's argument. As noted above, there is no dispute that

12 plaintiff was working for OA since early 1997 under an oral

13 independent contractor agreement. There is also no dispute that

14 the parties exchanged drafts of the written ICA in late 1997 and

15 early 1998 and that neither plaintiff, nor anyone from OA signed

16 the written ICA. Plaintiff contends that the parties simply

17 proceeded along the terms of the oral agreement and that his

18 failure to sign the written ICA is objective evidence of his intent

19 not to be bound by it. Defendants contend that regardless of

20 plaintiff's, and defendants', failure to sign the written ICA, its

21 provisions still control the parties' relationship.

22      The first problem I have is that the historical facts are not

23 fully developed in the summary judgment record. As noted above,

24 although the record discloses plaintiff's compensation under the

25 oral agreement, there is no evidence[3] of any non-competition or

26

27      [3] I have reviewed the entire summary judgment record
   carefully. Nonetheless, I note that Local Rule 56(e) provides
28 that "Except as otherwise required by law, when resolving a

12 - OPINION & ORDER

confidentiality provision in the oral contract.  Thus, I cannot assess whether the drafts of the written ICA were simply a written memorialization of the preexisting oral contract or were a proposed contract modification.  In either of those cases, Section 20 would not apply because it addresses contract formation rather than written memorialization of a preexisting oral contract or modification of a preexisting contract.

Second, even if the historical facts supported analyzing the issue as one of contract formation, I reject defendants' characterization of the cited deposition testimony.  Defendants contend that plaintiff admitted in deposition that the final version of the written ICA reflected the parties' intentions, and that plaintiff testified that although the written ICA contains explicit provisions regarding confidentiality and non-competition, he did not believe he owed any duties to OA regarding the protection of confidential information or competitive interests. Defendants also assert that at no time did plaintiff inform OA that he did not agree with the written ICA's non-competition and confidentiality provisions.

Although plaintiff admitted in his deposition that Deposition Exhibit 40 incorporated his handwritten edits to Deposition Exhibit 41[4], his testimony does not support defendants' assertion that Deposition Exhibit 41 was the last draft plaintiff edited or that the handwritten edits were to a final draft.  Pltf's Depo. at pp.

motion for summary judgment, the court has no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."

[4]  See footnote 2.

13 - OPINION & ORDER

138, 140 (while admitting that Deposition Exhibit 40 incorporated the changes plaintiff had made to Deposition Exhibit 41, plaintiff also testified that he could not recall the particular order of the draft agreements and thus, could not recall if there was one after Deposition Exhibit 40).  The deposition testimony also does not support defendants' assertion that plaintiff intended to be bound by Deposition Exhibit 40.  Id. at pp. 140, 153 (although plaintiff testified that by preparing "this document," (presumably referring to Deposition Exhibit 40), both parties were seeking to confirm "this consulting relationship[,]" he also stated that the fact he did not sign Deposition Exhibit 40 provides a reason to believe that it did not express his agreement with OA at that time in regard to his consulting services).  Id. at p. 140.

Next, defendants rely on the following testimony to support their assertion that plaintiff had no intent to be bound by the written ICA's confidentiality and non-compete provisions "from day one":

> Q:  Did you believe that during the time that you worked for Oregon Aero you had the right to compete with them in any of their areas of products or inventions?
>
> [objection by counsel but witness instructed he could answer]
>
> A:  Yes
>
> Q:  And could that competition take the form of your contacting a competitor in regards – or of Oregon Aero and while you were working for Oregon Aero offer support or product development services to them, to the competitor?
>
> [same objection and instruction]
>
> A:  I could have.
>
> Q:  Did you ever contact a competitor in regards – did you ever contact a competitor of Oregon Aero and work in

14 - OPINION & ORDER

1    any fashion to support them?

2    A:  No.

3    Q:  So, what you're talking about is a theoretical
     opportunity or right that you felt you had?
4
     A:  Yes.
5
     Q:  And did the right that you're describing, or the
6    privilege that you're describing, did it commence with
     your first employment with Oregon Aero or did it arise
7    subsequent to that?

8    [same objection and instruction]

9    A:  One, I was never an employee of Oregon Aero.  And
     since there was never an agreement signed, then from day
10   one I would have had that theoretical right.

11   Pltf's Depo. at pp. 242-44.

12       I do not read the testimony as an admission by plaintiff that

13   he lacked the present intent to comply with the confidentiality and

14   non-compete provisions of the written ICA at the time the written

15   ICA was being negotiated.  Rather, the testimony reveals that

16   plaintiff admitted that in retrospect, because the written ICA was

17   not signed, he would have had the right to compete from day one.

18   Thus, the record does not support OA's argument that at the time

19   the written ICA drafts were exchanged, plaintiff then possessed a

20   subjective intent not to be bound by the confidentiality and non-

21   compete provisions.  Accordingly, OA cannot sustain a contract

22   formation argument based on a Section 20(2) theory.

23       Finally, even if the non-competition and confidentiality

24   provisions were operative based on OA's Section 20(2) theory, OA

25   would still not prevail on the summary judgment motion as to its

26   breach of contract claim.  According to OA's own interpretation of

27   the cited testimony, plaintiff never took any action consistent

28   with his alleged belief that he was not bound by the non-

15 - OPINION & ORDER

competition provision.    There simply is no breach of the non-compete provision given the lack of any action by plaintiff.  <u>See</u> <u>Western Medical Consultants, Inc. v. Johnson</u>, 835 F. Supp. 554, 559 (D. Or. 1993) (Judge Redden held that an employee who was subject to an express non-compete agreement did not breach her fiduciary duty by failing to tell her employer that she <u>might</u> compete with the employer in its Alaska market), <u>aff'd</u>, 80 F.3d 1331 (9th Cir. 1996).

        The next theory upon which defendants argue that the non-competition and confidentiality provisions are operative, despite neither party signing the written ICA, is one they call "acceptance of benefits." Defendants contend that a party can accept a written contract offer by act or conduct as well as by writing.  Defendants suggest that where the party's assent is indicated by an act or conduct instead of by writing, the party is still bound by the terms of the written contract.

        While defendants may accurately state the law, <u>see</u> <u>Western</u> <u>Bank v. Morrill</u>, 245 Or. 47, 58, 420 P.2d 119, 124 (1966) (in absence of statute requiring agreement to be in writing signed by the party to be charged, parties may become bound by the terms of a written contract, though they do not sign it, where their assent is otherwise indicated), I still have concerns about the undeveloped historical facts, the undisputed evidence of the preexisting oral contract, and the cited deposition testimony. Even though the question of contract formation is one of law, on this record, I cannot ascertain if plaintiff's conduct was simply a continuation of his performance under the oral contract and nothing more, or is properly characterized as an acceptance of the

16 - OPINION & ORDER

proposed written contract.    Thus, I reject defendants' summary
judgment argument that a contract was formed based on an
"acceptance of benefits" theory.

Finally, defendants contend that even if there is no basis for
finding an express contract, I should find an implied-in-fact
contract by inferring one from the parties' conduct, or
alternatively, I should at least imply at least the confidentiality
and non-competition terms in the parties' relationship.

Generally, a contract will be implied in fact when there is no
express mutual assent and the court determines the existence of
mutual assent by examining the parties' conduct.    See Owen v.
Bradley, 231 Or. 94, 103, 371 P.2d 966, 970 (1962) (implied
contract arises only where the natural and just interpretation of
the parties' acts warrants such a conclusion); see also Staley v.
Taylor, 165 Or. App. 256, 262, 994 P.2d 1220, 1224 (2000) (implied
in fact contract is not different in legal effect from an express
contract, but difference is in how parties manifest their
agreement; in express contracts, the parties use written or spoken
words and in implied in fact contracts, the parties' agreement is
inferred, in whole or in part, from their conduct).

The same problems as recited above plague this theory as well.
Based on the current record, plaintiff's conduct my be nothing more
than performance consistent with the preexisting oral contract.    It
does not appear that the written ICA was proposed at the outset.
Thus, there is no support in the current record for an implied-in-
fact contract based on plaintiff's performance being objectively
consistent with writings generated contemporaneously with the
initiation of plaintiff's relationship with OA.    Instead, the

17 - OPINION & ORDER

1  record shows plaintiff had performed under an oral contract for

2  months before the parties drafted and exchanged written proposals.

3

4      As to the confidentiality and non-compete provisions,

5  defendants argue that I should imply these contract terms based on

6  plaintiff's admission that during the course of his work for OA, he

7  was aware of and worked to protect OA's confidential information

8  and its competitive interests.  Defendants argue that this

9  establishes a course of conduct which supports implied contract

10  terms regarding protection of confidential information and

11  competitive interests.

12      Here, again, the facts in this summary judgment record cannot

13  support a conclusion that as a matter of law, these terms should be

14  implied.  Moreover, there is no evidence that plaintiff actually

15  breached any such term by any conduct and thus, summary judgment on

16  the contract claim, at least as to these provisions, is denied for

17  that reason alone.   To the extent defendants contend that

18  plaintiff's conduct in bringing this lawsuit is a breach of a

19  contract provision, I reject that argument.  I find no support for

20  defendants' theory that if a party to a contract has a contrary

21  view of whether there is a contract at all, or in the

22  interpretation of a contract, it cannot litigate those issues

23  without being in breach of the contract.

24      I deny defendants' motion for summary judgment as to the

25  breach of contract claim.

26  II.  Declaratory Judgment Claim - Defendants' Motion

27      In this counterclaim, defendants seek a declaration that

28  plaintiff is not an inventor on the two patents or five patent

18 - OPINION & ORDER

applications, and has no ownership interest in those patents or patent applications.  Defendants also seek a declaration that OA employee Tony Erickson should be named as an inventor on one of the patents and the five patent applications.

In the summary judgment motion, defendants argue for summary judgment on the declaratory judgment claim based on the same argument that OA asserted in support of its breach of contract claim:  that the written ICA defines "confidential information" to include patents and that plaintiff is bound by the confidentiality provision of the written ICA under any of several legal theories. For the reasons explained above in the section discussing the breach of contract claim, I deny defendants' motion on the declaratory judgment claim.

III. Counterclaims Implicating Plaintiff's Inventorship - Plaintiff's Motion

Plaintiff moves for summary judgment on (1) defendant's 35 U.S.C. § 256 counterclaim; (2) the declaratory judgment counterclaim; (3) the portion of the breach of contractual duty of good faith counterclaim contending that plaintiff misled and concealed from OA that he did not contribute to the patent conceptions and continued to accept compensation from OA when he was not a co-inventor; (4) the portion of the breach of fiduciary duty counterclaim alleging that he breached a fiduciary duty by not disclosing his lack of contribution to the conception of the patents, by continuing to accept compensation under the false pretense that he was an inventor, and by misleading others regarding his role in developing the patents; and (5) the portion of the unjust enrichment counterclaim alleging that plaintiff did

19 - OPINION & ORDER

1  not disclose his lack of contribution to the conception of the
2  patents and continued to accept compensation beyond that to which
3  he was entitled.

4      A.  35 U.S.C. § 256

5      In this claim, defendants contend that although plaintiff is
6  listed as either an inventor or co-inventor on U.S. Patent No. 6,
7  467, 099 ("the '099 patent"), U.S. Patent No. 6,812,375 ("the '375
8  patent"), U.S. Patent Application No. 20020152542 ("the '542 patent
9  application"), and U.S. Patent Application No. 20050255307 ("the
10 '307 application"), plaintiff did not contribute to the conception
11 of any claims of these patents and patent applications and instead,
12 had only limited or no involvement with the patents or their
13 claims.  Answer at ¶¶ 59, 60, 62.  Defendants contend that
14 plaintiff misled OA as to his involvement in the conception of the
15 patents and patent applications.  Id. at ¶ 63.  Defendants further
16 contend that Erickson contributed to the conception of the '099
17 patent, and two patent applications.  Id. at ¶ 64.

18     Defendants seek an order directing the United States Patent &
19 Trademark Office to remove plaintiff as a named inventor of the
20 '099 patent, the '375 patent, the '542 patent application, the '307
21 patent application, and three other patent applications.  Id. at ¶¶
22 67, 68.  Defendants further seek an order directing the United
23 States Patent & Trademark Office to add Erickson as a named
24 inventor on the '099 patent, and all of the noted patent
25 applications.  Id.

26     Section 256 provides:

27         Whenever through error a person is named in an
           issued patent as the inventor, or through error an
28         inventor is not named in an issued patent and such error

20 - OPINION & ORDER

arose without any deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section.  The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256.

The law presumes that because plaintiff is a named inventor, he was indeed an inventor. Caterpillar, Inc. v. Sturman Indus., Inc., 387 F.3d 1358, 1377 (Fed. Cir. 2004) ("Patent issuance creates a presumption that the named inventors are the true and only inventors."), cert. denied, 545 U.S. 1114 (2005).  The law requires defendants to provide clear and convincing evidence to overcome this presumption.  Id.  The testimony of the person claiming to have been omitted from the patent as an inventor is not, by itself, clear and convincing evidence.  Id.

Here, defendants rely on testimony by Erickson, the alleged omitted inventor, and further rely on an affidavit by another OA employee, Dan Baxter. Erickson states that he was involved in all aspects of the development of the helmet pads; he provides details of that development process in his deposition testimony.  Erickson Depo. at pp. 6-12, 26-27.  Erickson testified that plaintiff made "contributions to the overall products of [OA] that [plaintiff] worked on[,]" with "contributions" meaning communicating information, customer needs, what the market wanted, or the performance of products, or prototypes of products.  Id.  at pp. 33-34.  He also contributed by communicating government

21 - OPINION & ORDER

1   specifications and identifying what the product needed to do.  Id.
2   Later, Erickson testified that plaintiff had little to do with the
3   design of the BLU and BLSS kits.  Id. at p. 47.

4      Baxter, initially involved with OA's production of aircraft
5   seats, frequently worked with Erickson on various projects related
6   to product development and production.  Baxter Affid. at ¶ 2.  He
7   observed plaintiff in plaintiff's capacity as military liaison,
8   communicating with the military regarding equipment problems and
9   then relaying that information to Baxter and Erickson.  Id. at ¶ 4.

10     Baxter remembers plaintiff bringing three green pads plaintiff
11  had received from the military, to Erickson and Baxter, to
12  determine if OA could produce the same type of pads.  Id. at ¶ 5.
13  Baxter and Erickson focused on improving the design.  Id. at ¶ 7.
14  Baxter describes how Erickson formulated and pursued ideas
15  regarding the development of the BLU and BLSS kits.  Id. at ¶ 12.
16  He notes that plaintiff observed and assisted during testing of
17  such ideas.  Id.  He concludes that while plaintiff was present at
18  OA during the development of the pad system that ultimately became
19  the BLU/BLSS kits, his role was limited to providing input from the
20  military regarding its needs, assisting with the testing, and
21  working with the military with field testing of the product.  Id.
22  at ¶13.

23     In contrast, Tucker describes his contributions to the patents
24  covering the designs of the BLU and BLSS kits as including
25  designing a five-pad system for the BLU kit, and having
26  responsibility for the design of the system when the military
27  requested that the number of pads increase from five to seven.
28  Tucker Declr. at ¶ 6.  Plaintiff further testifies regarding his

22 - OPINION & ORDER

1  contributions to the other patent at issue in the case, and states

2  that it resulted from his idea for an improved blunt impact

3  protection system for fire-fighting helmets. Id. at ¶ 8. He notes

4  that the design was completely his idea. Id.

5      Clearly, on this record, there is a disputed issue of fact

6  regarding the contribution plaintiff made to the patents.

7  Defendants assert that plaintiff's participation in the development

8  of the patents was minimal, while plaintiff attests to providing

9  more substantial ideas of conception and design.

10     The precise question here, however, is whether defendants have

11 created an issue of fact by showing, with clear and convincing

12 evidence other than that of the omitted inventor, that plaintiff

13 was not an inventor or co-inventor. See Anderson v. Liberty Lobby,

14 Inc., 477 U.S. 242, 254-55 (1986) (noting that in ruling on a

15 summary judgment motion, the district court takes this heightened

16 evidentiary standard into consideration).

17     "To be a joint inventor, an individual must make a

18 contribution to the conception of the claimed invention that is not

19 insignificant in quality[.]" Cook Biotech Inc. v. Acell, Inc., 460

20 F.3d 1365, 1373 (Fed. Cir. 2006) (internal quotation omitted).

21 While Erickson's testimony describing plaintiff's allegedly minimal

22 participation in the product development process cannot, as a

23 matter of law, constitute clear and convincing evidence to refute

24 the presumption of plaintiff's inventor status, his testimony is

25 corroborated by Baxter's testimony which, if credited as true,

26 would tend to show that plaintiff's contributions, described by

27 Baxter as being limited to providing information about the product

28 to and from the military and assisting in testing, do not meet the

1   level of contribution required to be considered an inventor.

2       Baxter's affidavit is sufficient to defeat the motion, even

3   considering the clear and convincing burden of proof defendants

4   bear on this issue, because if his corroborating testimony is

5   believed, plaintiff's work on the patented products was not a

6   contribution to the product's conception.  E.g., Trovan, Ltd. v.

7   Sokymat SA, Irori, 299 F.3d 1292, 1302-03 (Fed. Cir. 2002)

8   (corroborating evidence "preferably comes in the form of physical

9   records that were made contemporaneously with the alleged prior

10  invention," but may also consist of circumstantial evidence about

11  the inventive process or reliable testimony from someone other than

12  the omitted inventor); Sim Kar Lighting Fixture Co. v. Genlyte,

13  Inc., 906 F. Supp. 967, 971-72 (D.N.J. 1995) (sworn statement by

14  omitted inventor insufficient by itself to defeat patent holder's

15  motion for summary judgment on section 256 claim brought by omitted

16  inventor, but motion denied because statement in a pretrial

17  document by patent licensee that omitted inventor was an inventor

18  provided sufficient corroboration under clear and convincing

19  standard); Celstron Pac v. Criterion Mfg. Co., Inc., 552 F. Supp.

20  612, 615-16 (D. Conn. 1982) (motion for summary judgment on claim

21  of misjoinder of inventors denied when deposition testimony

22  regarding roles played by individuals, conflicted).

23      I deny plaintiff's motion on this claim.

24      B.  Other Counterclaims Implicating Inventorship

25      For the reasons explained in connection with the motion on the

26  section 256 claim, I deny plaintiff's motion addressed to the

27  declaratory judgment claim and the portions of the three other

28  claims that contend that plaintiff is not an inventor or a co-

inventor of the patents or patent applications at issue in the case.    The record reveals conflicting evidence regarding plaintiff's role in the development of the products and thus, summary judgment is inappropriate.

IV.  35 U.S.C. § 285 - Plaintiff's Motion

Although not a separately delineated counterclaim, defendants seek the recovery of attorney's fees under 35 U.S.C. § 285 in connection with their section 256 claim.  Section 285 states that the court may award reasonable attorney's fees to the prevailing party in a patent case, in "exceptional cases."  35 U.S.C. § 285.

Plaintiff moves for summary judgment on this claim, arguing an "exceptional case" is found only upon clear and convincing evidence of bad faith by the party claiming patent ownership, and such a showing is impossible for a claim under section 256 because section 256 is confined to when omission or other inventorship mistake is due to inadvertent error.

Plaintiff correctly states that a party seeking attorney's fees under section 285 must prove the existence of an "exceptional case" by clear and convincing evidence of bad faith.  See, e.g., Hoffmann-La Roche Inc. v. Invamed Inc., 213 F.3d 1359, 1365 (Fed. Cir. 2000) (prevailing party must prove the existence of an exceptional case by clear and convincing evidence, showing willful infringement; inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; or a frivolous suit).

However, plaintiff misstates the law regarding section 256. That statute allows a misjoined inventor to be deleted regardless of whether the error of misjoinder occurred by deception or

25 - OPINION & ORDER

1  mistake.  <u>University of Col. Foundation, Inc. v. American Cyanamid</u>
2  <u>Co.</u>, 196 F.3d 1366, 1374 (Fed. Cir. 1999).  In contrast, the
3  statute allows the error of nonjoinder, where the inventor is
4  completely omitted and wants to be added, to be corrected only in
5  the absence of deceptive intent.  <u>Id.</u>  As explained by the Federal
6  Circuit, "the statute allows correction in all misjoinder cases
7  featuring an error and in those nonjoinder cases where the unnamed
8  inventor is free of deceptive intent."  <u>Id.</u>

9      Defendants' counterclaim concerns both a misjoinder argument
10 (plaintiff should not have  been listed as in inventor), and a
11 nonjoinder argument (Erickson should have been a named inventor).
12 Here, because the statute allows a misjoinder error to be corrected
13 even if the error occurred by deception, I cannot conclude, as a
14 matter of law, that defendants cannot seek attorney's fees pursuant
15 to section 285 should they prevail on that aspect of the
16 counterclaim.

17     However, I reach the opposite result as to the nonjoinder
18 argument.  The nonjoinder error may be corrected only if the
19 nonjoinder mistake occurred with no deception by the omitted
20 inventor, in this case Erickson.  Plaintiff argues that because
21 defendants can sustain this part of the claim only by showing an
22 innocent mistake, it is, by definition, incompatible with a
23 determination of bad faith.

24     The proper inquiry on the fee issue, however, is not the bad
25 faith of the omitted inventor, but rather, the bad faith on the
26 part of the party who loses the claim, meaning plaintiff in the
27 case of defendants' claim for attorney's fees.  Although plaintiff
28 may have focused on the wrong actor, because the summary judgment

26 - OPINION & ORDER

1    record does not create an issue of fact regarding bad faith by

2    plaintiff in the question of Erickson's nonjoinder, I grant summary

3    judgment to plaintiff on defendants' request for attorney's fees to

4    the extent defendants should prevail on the nonjoinder portion of

5    their section 256 claim.

6        In defendants' response to plaintiff's concise statement of

7    facts, filed by defendants in opposition to plaintiff's summary

8    judgment motion, defendants cite to portions of deposition

9    testimony from plaintiff, Mike Dennis, and John Dickinson, OA's

10   patent counsel.  Defts' Resp. to Pltf's CSF at ¶ 8.  The cited

11   evidence indicates that (1) both Mike Dennis and plaintiff

12   communicated to Dickinson about certain patents, (2) in terms of

13   identification of inventors, that plaintiff and Mike Dennis, on one

14   occasion in 1998, indicated they were both inventors as to an

15   unidentified product and that Dickinson did not recall either Mike

16   Dennis or plaintiff identifying anyone else, (3) plaintiff believed

17   Erickson had a role in testing a product, possibly a "KLU kit," and

18   that Baxter or Erickson might have been involved in the development

19   team of that product, and (4) if Erickson's or Baxter's

20   contribution could be considered "patentable novelty" as to the KLU

21   kit, plaintiff believed it was Mike Dennis's role to inform

22   Dickinson of that.  Id.

23       It is defendants' burden to come forward with some evidence

24   capable of creating a material issue of fact, on the question of

25   whether plaintiff somehow acted with deception or in bad faith in

26   Erickson's failure to be listed as a named inventor on the relevant

27   patents.  Defendants fail to meet that burden with this evidence.

28   Accordingly, I grant plaintiff's motion on the section 285 claim,

27 - OPINION & ORDER

1   in part, to the extent that the claim seeks fees for any success on

2   the section 256 claim to correct the nonjoinder of Erickson.

3   V.   Rescission Claim - Plaintiff's Motion

4        In  this  claim,  plaintiff  seeks  rescission  of  the  patent

5   assignments  he  made  to  MJD,  and  a  declaration  and  permanent

6   injunction that he is the joint owner of an undivided interest in

7   the patents either because they are void for lack of consideration

8   or, alternatively, because they were obtained by fraud.  Sec. Am.

9   Compl. at ¶ 32.   Plaintiff seeks summary judgment on this claim,

10  arguing that the patent assignments are void and reinstatement of

11  plaintiff's interest must occur because there is no dispute that

12  there was an absence of consideration supporting the assignment.

13       Although plaintiff accurately suggests that the modification

14  of  a  contract  must  be  supported  by  consideration,  Bennett v.

15  Farmers Ins. Co. of Or., 332 Or. 138, 148, 26 P.3d 785, 792 (2001)

16  ("It  is  axiomatic  that  parties  to  a  contract  may  modify  that

17  contract by mutual assent[;] . . . [s]uch a modification must be

18  supported by consideration") (citation omitted), the problem here

19  is  that  the  issue  of  the  parties'  contract  terms  remains  in

20  dispute.

21       The written ICA contains an explicit confidentiality provision

22  which  provides  that  any  "confidential  information"  whether

23  developed by plaintiff or not, "shall at all times be Oregon Aero's

24  exclusive property."  Exh. B to May 1, 2006 Griffin Affid. at pp.

25  4-5.   "Confidential  Information"  is  defined  to  include  OA's

26  inventions created by an OA employee or by plaintiff.  Id.  The

27  written ICA expressly provides that the term inventions is to be

28  construed broadly and includes any idea, invention, etc., created,

28 - OPINION & ORDER

1  conceived, or developed by plaintiff or under his direction,

2  whether solely or with others.  Id.

3      If the written ICA governs the parties' relationship, it

4  appears to give ownership rights in the patents to OA in the first

5  instance.  Thus, plaintiff would not have had an ownership interest

6  to assign to MJD and cannot base a rescission claim on the lack of

7  consideration for an assignment that was, essentially, superfluous.

8      However, I note that if the written ICA does not control,

9  plaintiff has a strong argument on the rescission claim because

10  Mike Dennis himself states that plaintiff was given nothing new or

11  in addition to what plaintiff had been receiving all along, in

12  consideration for his assignment of the patents to MJD.  Mike

13  Dennis Depo. at pp. 143-44.

14      In supplemental briefing following oral argument, defendants

15  contend that plaintiff's independent contractor status itself

16  created a duty to assign the patents to defendants and thus, no

17  additional consideration is required to render the assignments

18  valid.  I reject this argument.  Defendants principally rely on a

19  1993 District of Colorado case to argue that even though plaintiff

20  was not an employee of OA, the fact that he was hired specifically

21  to design and invent means he has no ownership rights to the

22  patents he produced while performing these services for OA.

23      The problem with defendants' position is that the case,

24  Computer Associates Int'l v. American Fundware, Inc., 831 F. Supp.

25  1516 (D. Colo. 1993), did not involve patent rights.  Rather, it

26  addressed ownership rights by an independent contractor to trade

27  secrets.  The plaintiff computer software company moved for summary

28  judgment on an unfair competition counterclaim brought by the

29 - OPINION & ORDER

1  defendant, on the basis that the claim was barred by the "Noerr-
2  Pennington doctrine," under which "those who petition government
3  for redress are generally immune from antitrust liability." Id. at
4  1521 (internal quotation omitted).  As the court explained, "[i]n
5  the adjudicatory setting, the Noerr-Pennington doctrine protects a
6  litigant from antitrust liability unless his opponent can establish
7  that the litigant's case is a sham." Id.

8       In addressing this "sham" exception, the court discussed the
9  defendant's argument that the plaintiff's claims in litigation were
10 objectively baseless because the plaintiff did not own the computer
11 software programs at issue as they were owned by the independent
12 contractors who were hired to produce them.  Id. at 1524.  The
13 court rejected the defendant's argument.  The court noted that
14 under the common law of trade secrets, when an employer pays an
15 employee to design, the employer owns the "fruits of [the
16 employee's] labor." Id.

17      The court then extended this "ownership rule" to employee
18 ideas and developments, which, it stated, meet the definition of a
19 trade secret.  Id.  Then, the court, quoting a trade secrets
20 treatise, concluded that the rule is extended to nonemployment
21 situations so that an independent contractor should be considered
22 equivalent to an employee hired to develop an idea, with the
23 results of his or her work owned by the hiring company.  Id.[5]

24 _____

25      [5]  In a "see, e.g." cite, the court also cited a 1991 Ninth
   Circuit case, Lamb-Westson, Inc. v. McCain Foods, Ltd., 941 F.2d
26 970, 972-73 (9th Cir. 1991), with the following explanatory
   parenthetical:  "(affirming grant of preliminary injunction to
27 potato processor holding trade secret in blade system developed
   by independent contractor)."
28      Lamb-Weston, however, involved a situation where the

30 - OPINION & ORDER

1    Defendants argue that trade secrets are sufficiently analogous

2    to patents and that I should apply the reasoning in the Colorado

3    case to the situation here and conclude that even though plaintiff

4    was an independent contractor of OA, his work is owned by OA

5    because he was hired to create or design.  I am unwilling to extend

6    the reasoning in Computer Associates without some authority that it

7    applies to patents.  First, Computer Associates is not binding on

8    this court.   Second, the discussion in the case relied on by

9    defendants arose in an entirely different context than presented

10   here.  Third, the case was confined to trade secrets, not patents.

11   Fourth, while trade secrets may share some similarities to patents

12   (development of an idea and development or design of a process or

13   machine), there are notable differences.  See Cataphote Corp. v.

14   Hudson, 422 F.2d 1290, 1293 (5th Cir. 1970) (trade secret creates

15   opportunity to obtain an advantage over competitors who do not know

16   of or use it; patent laws establish a monopoly for the purpose of

17   encouraging invention and the arts; the trade secret is protected

18   by being kept secret and the patent is protected after being spread

19   on the public records for all to see).  Thus, I do not extend the

20   holding of Computer Associates to the facts of this case.

21   Defendants also assert that as a fiduciary, plaintiff was

22

23   _____

24   independent contractor orally agreed to keep the plaintiff's
     information confidential and then later signed a written

25   confidentiality agreement.  Id. at 972, 973 n.2.  The case
     involved a claim of misappropriation of trade secrets and the

26   relevant issue resolved by the court was whether there was a
     confidential relationship between the party asserting trade

27   secret information and the party who disclosed the information;
     the issue was not one of ownership of a design idea by the

28   independent contractor.

31 - OPINION & ORDER

bound to assign the patents to OA. Defendants' argument is initially premised on its theory that the provisions in the written ICA created a fiduciary relationship between plaintiff and OA. For the reasons explained above, there are material issues of fact precluding a determination on summary judgment regarding whether the written ICA governed the parties' relationship despite its lack of signatures.

To the extent defendants' argument is premised on a fiduciary duty emerging from the parties' oral agreement, I conclude that the record is similarly undeveloped in regard to the terms of that agreement. Thus, while fiduciary duties may exist in an agency relationship, including one of independent contractor - contractee, I cannot ascertain whether the oral agreement in this case created such fiduciary duties.

More importantly, the cases defendants cite in support of this argument concern the fiduciary duty of corporate officers to assign patents to a corporation. Defendants argue that the fact that plaintiff was not a corporate officer is irrelevant because it is not the title, but the nature of the position that determines whether a fiduciary responsibility exists. Id. But, while the title of corporate officer itself may not determinative, the cases all concern the fiduciary duties owed by an employee of the corporation and do not address the fiduciary duties of an independent contractor. Thus, defendants fail to cite support for the proposition that the fiduciary duties owed as part of an independent contractor relationship extend beyond those of loyalty or confidentiality, and include the actual assignment of patents to the contractee. Without any such authority, I reject defendants'

32 - OPINION & ORDER

1  argument.[6]

2      In summary, on this claim, I deny plaintiff's motion on the
3  rescission claim because the issue of whether the written ICA
4  controls the parties' relationship cannot be resolved.

5  VI.  Conversion Claim - Plaintiff's Motion

6      Plaintiff contends that in obtaining the assignments of
7  plaintiff's ownership rights to the patents to MJD, defendants
8  intended to exercise dominion and control over plaintiff's rights
9  and in doing so, interfered with plaintiff's right to possession of
10 his undivided interest in the patents.  Sec. Am. Compl. at ¶ 35.
11 Plaintiff contends that as a result of defendants' conversion of
12 plaintiff's patent rights, plaintiff is entitled to damages in the
13 amount of the market value of the patents of $3,500,000.  Id. at ¶
14 36.  Plaintiff also seeks punitive damages based on his assertion
15 that defendants' conduct was intentional, willful, in violation of
16 acceptable conduct, and calculated to have plaintiff forfeit his
17 extremely valuable ownership rights and royalties.  Id. at ¶ 37.

18     In Oregon, "'[c]onversion is an intentional exercise of
19 dominion or control over a chattel which so interferes with the
20 right of another to control it that the actor may justly be
21 required to pay the other the full value of the chattel.'"  Mustola
22 v. Toddy, 253 Or. 658, 663-64, 456 P.2d 1004, 1007 (1969) (quoting
23 Restatement (Second) of Torts § 222A (1965)); see also Hemstreet v.
24 Spears, 282 Or. 439, 444, 579 P.2d 229, 233 (1979) (reaffirming use
25 of Restatement).

26

27     [6]  Because of my conclusion here, I deny plaintiff's motion
   to strike defendants' submission of supplemental authority as
28 moot.

33 - OPINION & ORDER

1    Oregon courts follow a traditional formulation of the tort
2  which includes examining various factors to determine the
3  seriousness of the interference and the justice in requiring the
4  actor to pay the full value as a consequence of a forced judicial
5  sale of the chattel.  See Mustola, 253 Or. at 663-64, 456 P.2d at
6  1107 (quoting Restatement's list of six factors).

7    Plaintiff moves for partial summary judgment on the conversion
8  claim because, plaintiff argues, it is undisputed that defendants
9  exercised, and continue to exercise, dominion and control over
10 plaintiff's patent rights by means of the assignments to MJD and
11 that the assignments are not enforceable due to the lack of
12 consideration or fraud.  In essence, plaintiff seeks summary
13 judgment on the issue of liability, and leaves for trial the value
14 of the patent rights that plaintiff alleges defendants converted,
15 because, plaintiff asserts, there are no material disputes that
16 defendants exercise such dominion and control over plaintiff's
17 property interests such that they should be required to purchase
18 those interests.

19   I deny the motion because the issue of whether plaintiff had
20 any ownership rights to the patents remains outstanding.  If
21 defendants prevail in their argument that the written ICA governs
22 the parties' relationship, the evidence suggests that the
23 assignment of the patents was consistent with the terms of the
24 written ICA and thus, defendants would not be liable for
25 conversion.  However, if defendants do not prevail in that
26 argument, then the relevant question is whether the oral contract,
27 whose terms are still unknown other than the compensation
28 provision, gave defendants enough of a claim or stake in the

34 - OPINION & ORDER

patents to exercise the level of control over the patents that defendants have actually exercised, to avoid liability for conversion.  Because the record does not contain the relevant facts, I deny the motion directed to the conversion claim.

VII. Breach of Fiduciary Duty Counterclaim - Plaintiff's and Defendants' Motions

In this counterclaim, OA contends contend that while plaintiff provided consulting services to OA from 1997 to 2005, he was privy to OA's valuable confidential and proprietary information, and was under a duty to maintain the confidentiality of such information. Answer at ¶ 87.  OA asserts that plaintiff owed OA the fiduciary duties of loyalty, good faith, and full disclosure.  Id. at ¶ 88. OA further contends that plaintiff breached his fiduciary duty to OA in a number of specific ways.  Id. at ¶ 89.

Plaintiff moves for summary judgment on this counterclaim because, plaintiff argues, there is no fiduciary duty owed in the context of an independent contractor agreement and alternatively, there was no breach of any duty in any event.  OA moves for summary judgment, arguing that a fiduciary relationship arises out of plaintiff's agency relationship with OA.

As noted above in the discussion of plaintiff's rescission claim, I cannot grant summary judgment to either party on the question of whether there was a fiduciary duty owed by plaintiff to OA based on either the written ICA or the oral agreement because the relevant terms of the latter are not in this record and the record does not allow resolution of whether the former actually governed the parties' relationship.  Moreover, as noted above, I reject defendants' arguments that independent of any terms of

35 - OPINION & ORDER

1  either the oral agreement or a written one, a fiduciary duty

2  regarding patent rights is automatically implied into any

3  independent contractor - contractee relationship.

4       Even assuming, however, for the purposes of this motion, that

5  plaintiff owed OA fiduciary duties of confidentiality and non-

6  competition, I grant plaintiff's motion on this claim and deny

7  defendant's motion.  The only breach of fiduciary alleged by

8  defendant in this motion is that plaintiff possessed a secret

9  intent not to comply with the confidentiality and non-competition

10 provisions of the written ICA.  The record is devoid of any

11 evidence that plaintiff took any actions in furtherance of this

12 alleged secret belief.  Without such conduct, defendant's claim

13 fails.  Western Med. Consultants, 835 F. Supp. at 559 (employee who

14 was subject to express non-compete agreement did not breach

15 fiduciary duty by failing to tell her employer that she might

16 compete with it in Alaska market).

17 VIII.  Fraudulent Inducement Counterclaim - Plaintiff's Motion

18      OA alleges that throughout the contract discussions and

19 negotiations between OA and plaintiff, plaintiff represented that

20 (1) all "inventions" whether or not developed by plaintiff, were

21 OA's exclusive property; (2) he would not compete with OA; and (3)

22 commission payments would end upon termination of the contract.

23 Answer at ¶ 92.  OA further alleges that despite these

24 representations, plaintiff had no intention of honoring them.  Id.

25 at ¶ 93.  OA asserts that plaintiff misrepresented that he would

26 perform according to the agreement between the parties and

27 concealed his true intention that he would not abide by it.  Id.

28      OA contends that plaintiff acted intentionally so as to induce

36 - OPINION & ORDER

1  OA to enter into the agreement, and any modifications thereto, and
2  to permit plaintiff to fraudulently obtain compensation and
3  benefits from OA.  Id.  OA further contends that it relied on
4  plaintiff's representations that he had agreed to the terms of the
5  contract and any modification thereto, that plaintiff's
6  misrepresentations were material, and that OA would not have gone
7  forward with the agreement, and any modifications thereto, had it
8  known that plaintiff had no intention of performing as required by
9  the terms of the agreement. Id. at ¶ 94.

10      Plaintiff moves for summary judgment on this counterclaim.
11  Plaintiff argues that because the written ICA is not a binding
12  contractual agreement, there were no representations made.
13  Although OA sought such promises in presenting draft agreements, no
14  such promises were obtained from plaintiff because the agreement
15  was never signed.  Additionally, as noted above, plaintiff did not
16  state in deposition that he lacked the present intent to comply
17  with the confidentiality and non-compete provisions of the written
18  ICA at the time the written ICA was being negotiated, but rather
19  stated that in retrospect, because the written ICA was not signed,
20  he would have had the right to compete from day one.

21      I deny plaintiff's motion on this claim because of the
22  presence of questions of historical fact relevant to contract
23  formation and specifically, relevant to the issue of whether the
24  written ICA governs the parties' relationship.  This is a
25  fundamental question requiring resolution before I can determine,
26  as a matter of law, if plaintiff made any binding representations
27  during the negotiation process and whether they were made with no
28  intent of performance.

37 - OPINION & ORDER

IX.   Unjust Enrichment Counterclaim - Plaintiff's Motion

      Plaintiff moves for summary judgment on this counterclaim in which OA contends that based on plaintiff's alleged failure to disclose that he did not intend to be bound by the parties' agreement regarding the ownership of the inventions, and the non-compete and confidentiality provisions of the written ICA, his continued acceptance of compensation in an amount not less than $1,057,945.60, unjustly enriched him and damaged defendants.

      I deny plaintiff's motion on this claim because, as stated throughout this Opinion, the record does not allow a determination at this point as to whether the written ICA controlled the parties' relationship, and the record does not contain all of the relevant and material terms of the preceding oral agreement.  Thus, without knowing which agreement governs, or the terms of the oral agreement, I cannot determine whether the compensation paid to plaintiff was "unjust" in the sense that OA conferred a benefit on plaintiff (the compensation) under circumstances making it unjust for plaintiff to retain it.  E.g., Winters v. County of Clatsop, No. 03-2129 A124361, 2007 WL 10414, at *2 (Or. App. Jan. 3, 2007) ("It is well-settled that, to establish unjust enrichment, a plaintiff must establish that (1) the plaintiff conferred a benefit on the defendant; (2) the defendant was aware that it had received a benefit; and (3) under the circumstances, it would be unjust for the defendant to retain the benefit without paying for it.").

X.   Breach of Duty of Good Faith Counterclaim - Defendants' Motion

      Defendants move for summary judgment on this counterclaim. Defendants argue that pursuant to the implied duties of good faith and fair dealing, plaintiff was required to act in a manner to

38 - OPINION & ORDER

1  avoid "the effect of destroying or injuring the right of the other
2  party to receive the fruits of the contract." Defts' Mem. at p.
3  15.  Defendants contend that plaintiff breached these duties when
4  he continued to accept compensation from defendants while at the
5  same time, concealing his belief that he was not subject to the
6  confidentiality and non-competition provisions of the written ICA.

7      The duty of good faith and fair dealing "serves to effectuate
8  the objectively reasonable expectations of the parties" and "may be
9  implied as to a disputed issue only if the parties have not agreed
10 to an express term that governs that issue[.]" Gibson v. Douglas
11 County, 197 Or. App. 204, 217, 106 P.3d 151, 158 (2005).  The duty
12 does not expand the substantive duties under a contract; rather, it
13 relates to the performance of the contract. See Zygar v. Johnson,
14 169 Or. App. 638, 645, 10 P.3d 326, 330 (2000) (a party's duty of
15 good faith in the performance of a contract cannot contradict an
16 express contractual term, nor otherwise provide a remedy for an
17 unpleasantly motivated act that is expressly permitted by the
18 contract).

19     Here, without knowing the governing contract terms,
20 plaintiff's alleged conduct cannot be adjudged as breaching the
21 implied duties of good faith and fair dealing.  The law requires
22 that the express contractual duties be examined first and the
23 parties' performance examined against the backdrop of those express
24 duties.  Accordingly, I deny defendants' motion on this
25 counterclaim.

26 XI.  Statute of Frauds Affirmative Defense - Defendants' Motion

27     In this affirmative defense, defendants simply state that
28 "[p]laintiff's breach of contract claim is barred by the statute of

39 - OPINION & ORDER

frauds."  Answer at ¶ 41.  Plaintiff's breach of contract claim
asserts, as noted above, that Mike Dennis represented that
plaintiff would be paid royalties on the sales of patented products
after he assigned the patents to MJD.  Plaintiff alleges that Mike
Dennis repeated this representation on more than one occasion.
Sec. Am. Compl. at ¶¶ 15, 17.  Plaintiff then contends that in
January 2005, defendants withdrew their offer to pay royalties and
thus, in February 2005, plaintiff ceased working for OA.  Id. at ¶
21.  Plaintiff contends that defendants' failure to pay the
promised royalties breached the parties' agreement and damaged
plaintiff in an amount of at least $3,000,000 in the years 2005
through 2007.  Id. at ¶ 23.

Defendants seek summary judgment on this affirmative defense
on the basis that the oral contract regarding royalty payments is
unenforceable under the statute of frauds because the agreement
would extend beyond one year.  I deny the motion.

Oregon statutes provide that an agreement that by its terms is
not to be performed within a year from the making, is void unless
memorialized in a writing.  Oregon Revised Statute § (O.R.S.)
41.580(1)(a).  As explained by the Oregon Court of Appeals:

> "In general, a verbal stipulation to render some
> particular service which fixes no definite or contingent
> time for its performance, but which is capable of
> performance within one year after the same is made, is
> not controlled by the statute, although the act probably
> will not be, and was not expected to be fulfilled within
> that time."

Kaiser Foundation Health Plan of the Northwest v. Doe, 136 Or. App.
566, 578, 903 P.2d 375, 382 (1995) (quoting Duniway v. Wiley, 85
Or. 86, 89, 166 P. 45 (1917), modified, 138 Or. App. 428, 908 P.2d
850 (1996).

40 - OPINION & ORDER

1    Here, as plaintiff notes, nothing in the oral agreement
2    regarding the royalty payments prevented defendants from performing
3    its alleged promise within one year after it was made. Because the
4    oral contract could have been performed within one year, the fact
5    that it probably would not be, or was not expected to be, does not
6    make the oral contract void under the statute of frauds.

7    Additionally, "a contract that would be void under a literal
8    reading of the statute is rendered enforceable in equity if the
9    party seeking to avoid the statute has partially performed the oral
10   contract." Siegner v. Interstate Prod. Credit Assoc. of Spokane,
11   109 Or. App. 417, 432, 820 P.2d 20, 30 (1991) (citing Engelcke v.
12   Stoehsler, 273 Or. 937, 944, 544 P.2d 582 (1975)).

13   The doctrine of part performance provides for enforcement of
14   an oral agreement if (1) "there is conduct corroborating and
15   unequivocally referable to the oral agreement sufficient to satisfy
16   the policy of the statute designed to minimize perjured claims and
17   the opportunities for fraud," and (2) "if there are equitable
18   grounds for enforcing the contract whether those grounds are found
19   in facts justifying the avoidance of unjust enrichment or relief
20   from fraud." In the Matter of the Marriage of DeCair, 131 Or. App.
21   413, 420, 885 P.2d 736, 740  (1995) (internal quotation and
22   emphasis omitted).

23   Here, it is undisputed that plaintiff assigned the patents to
24   MJD, which, if plaintiff's asserted facts are to be believed, is
25   conduct corroborating and unequivocally referable to the oral
26   agreement. If plaintiff owned the patents in the first instance
27   and they did not become the property of OA under the written ICA,
28   and if defendants orally represented that plaintiff would receive

41 - OPINION & ORDER

1   patent royalties in exchange for assigning the patents to MJD, and
2   failed to pay them, there may be grounds for equitably enforcing
3   the oral royalty payment contract.

4       Finally, as plaintiff notes, when facts suggest that one party
5   to the oral contract may have induced the other party to act based
6   on a false representation made by the first party with knowledge of
7   the facts and with the intention that it be acted upon by the other
8   party, and the other party was ignorant of the truth, the first
9   party may be estopped from asserting the statute of frauds.
10  Siegner, 109 Or. App. at 423, 820 P.2d at 30.   Here, plaintiff
11  contends that the patent assignments were induced by defendants'
12  misrepresentations.  Assuming the truth of the facts in plaintiff's
13  favor, defendants may be estopped from asserting the statute of
14  frauds.

15                           CONCLUSION

16      I deny defendants' motion for summary judgment (#64) and I
17  grant in part and deny in part plaintiff's motion for summary
18  judgment (#59).    Plaintiff's motion to strike defendants'
19  supplemental submission (#108) is denied as moot.

20      IT IS SO ORDERED.

21                  Dated this  1st   day of  February    , 2007.

22

23

24                          /s/ Dennis James Hubel
                         _____
                            Dennis James Hubel
25                          United States Magistrate Judge

26

27

28

42 - OPINION & ORDER